UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHELSEA HEARTH & FIREPLACES, INC.,

                    Plaintiff,                          No. 15-cv-12240

vs.                                                     Hon. Gerald E. Rosen

SCOTTSDALE INSURANCE COMPANY,

                    Defendant.

_____/

OPINION AND ORDER DECLINING TO EXERCISE DISCRETIONARY
JURISDICTION AND DISMISSING CASE, WITHOUT PREJUDICE

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on November 9, 2015

PRESENT:   Honorable Gerald E. Rosen
           United States District Chief Judge

## I.   INTRODUCTION

On June 19, 2015, Plaintiff Chelsea Hearth & Fireplaces, Inc. ("Chelsea") filed a

Complaint against its insurer, Defendant Scottsdale Insurance Company ("Scottsdale"),

seeking a declaratory judgment from this Court declaring that Scottsdale is obligated to

defend and indemnify Chelsea for damages it may be held liable for in an action filed on

May 7, 2015 in Washtenaw County Circuit Court by Juerten Schweizer for injuries

Schweizer claims that he suffered after Chelsea allegedly improperly installed a gas

fireplace causing natural gas fumes to be released in Schweizer's residence. *See*

1

*Schweizer v. Chelsea Hearth & Fireplace, Inc.*, Washtenaw County Circuit Court No.
15-000468-NO [Complaint Ex. B]. As of this date, Scottsdale is not named as a party in
the state court action.

<u>THE STATE COURT ACTION</u>

According to the state court complaint, Schweizer contracted with Chelsea to
convert a wood burning fireplace in his home to a gas fireplace, which included the
installation of a gas fireplace insert, blower fan, pipe and a new gas line. *Id.*, ¶ 6.  The
fireplace allegedly was negligently installed, which caused Schweizer's home to fill with
natural gas fumes. *Id.*, ¶ 7.  Schweizer claims the gas fumes caused him to become dizzy,
pass out and hit his head on a wall, and, as a result, he sustained four broken vertebrae in
his neck, which required surgery. *Id.*, ¶¶ 8-9.

Chelsea was served with the *Schweizer* complaint on May 27, 2015 and its
attorneys promptly filed their Appearance in the case on June 4, 2015.  *See* Register of
Actions, Washtenaw County Trial Court Records, available online at
https://tcweb.ewashtenaw.org/PublicAccess/CaseDetail.aspx?CaseID=347159.
However, rather than answer or respond to Schweizer's complaint, on June 19, 2015 --
the date on which an answer was due -- Chelsea, through the same counsel representing
it in the state court action, filed the instant declaratory judgment action in this Court.
The state court action, meanwhile, remains pending in the Washtenaw County Circuit
Court.  According to the state court records, on October 2, 2015, a Scheduling

2

Conference was held in the state action and it was on that date, October 2, 2015, that Chelsea finally filed an answer to the complaint. *Id.* According to the state court Scheduling Order entered on October 9, 2015, the matter is set for case evaluation on January 14, 2016, a settlement conference on February 15, and trial in March, 2016. *Id.*

<u>CHELSEA'S DECLARATORY JUDGMENT ACTION</u>

In the instant declaratory judgment action, Chelsea claims that the insurance policy issued to it by Scottsdale [Complaint Ex. A] obligates Scottsdale to defend and indemnify Chelsea for all sums which Chelsea may become obligated to pay Schweizer by reason of liability for damages resulting from "bodily injury" caused by an "occurrence." Chelsea maintains that the incident alleged in the state court *Schweizer* case constitutes an "occurrence" and the alleged personal injuries suffered by Schweizer constitute "bodily injury," as those terms are defined in the Scottsdale insurance policy. Chelsea further contends that there are no exclusions in the policy which apply to the claims asserted against Chelsea in the state court case.

Scottsdale responded to Chelsea's Complaint by way of a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss in which the insurer counters that a "Total Pollution Exclusion Endorsement" in the insurance policy applies to the claims asserted in the *Schweizer* action. This Exclusion Endorsement provides, in relevant part:

This insurance does not apply to

"bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage,

3

migration, release or escape of "pollutants" at any time.

*See* Complaint Ex. A, Pg. ID 42.  The term "pollutants" is defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  *Id*. Pg. ID 38.

Scottsdale argues that Pollution Exclusion Endorsement, "unequivocally" excludes coverage for bodily injuries allegedly suffered the plaintiff in *Schweizer* due to the natural gas fumes that he claims were released in his house as a result of Chelsea's negligent installation of his gas fireplace.  Therefore, Scottsdale maintains that it is not obligated to defend or indemnify Chelsea for any damages it may sustain in the *Schweizer* litigation.  Chelsea disputes Scottsdale's contentions and argues that the pollution exclusion is inapplicable under the facts of the underlying tort action and that, in any event, Michigan courts take a broad view of an insurer's duty to defend such that all that is required to trigger the duty is that the allegations against the insured "arguably" come within the policy coverage; if there is any doubt as to whether a complaint triggers the liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

After reviewing Chelsea's Complaint and Motion for Declaratory Judgment, Scottsdale's Motion to Dismiss, and the entire record in this action, as well as the complaint and record of proceedings in the *Schweizer* state court action, the Court issued a Show Cause Order directing Plaintiff to show cause in writing why this Court should

4

not decline to exercise jurisdiction over this matter.  Scottsdale timely responded to the

Court's Order.

## II.  DISCUSSION

A.   THE DECLARATORY JUDGMENT ACT -- APPLICABLE STANDARDS

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that the federal

courts "may declare the rights and other legal relations of any interested party seeking

such declaration," but does not *demand* that they do so.  28 U.S.C. § 2201(a).  The

Supreme Court has made clear that it is within the district court's discretion to decide

whether to entertain a declaratory judgment action or to abstain, on a case-by-case basis.

*See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Brillhart v. Excess Ins. Co. of*

*Am.*, 316 U.S. 491, 495 (1942).

As the Court explained in *Wilton v. Seven Falls Co.*, *supra*:

Since its inception, the Declaratory Judgment Act has been understood to
confer on federal courts unique and substantial discretion in deciding
whether to declare the rights of litigants. . . .  The statute's textual
commitment to discretion, and the breadth of leeway we have always
understood it to suggest, distinguish the declaratory judgment context from
other areas of the law in which concepts of discretion surface. . . .  When
all is said and done, we have concluded that the propriety of declaratory
relief in a particular case will depend upon a circumspect sense of its
fitness informed by the teachings and experience concerning the functions
and extent of federal judicial power. . . .

* * *

[T]here is nothing automatic or obligatory about the assumption of
"jurisdiction" by a federal court to hear a declaratory judgment action.  By
the Declaratory Judgment Act, Congress sought to place a remedial arrow

5

in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. **Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion**, to stay or **to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close**. In the declaratory judgment context, **the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration**.

115 S.Ct. at 2143 (citations and some internal punctuation omitted; emphasis added).

Consistent with the principles enunciated by the Supreme Court, in a series of cases dating back to at least 1984, the Sixth Circuit has repeatedly found that when a state action is pending or when trial has been completed in a state court, generally that court is in a better position than a federal district court to decide an insurance declaratory judgment action that involves underlying factual issues. While, the appellate court has made clear that "there is no *per se* rule against a district court's entertaining a declaratory judgment action to determine an insurer's liability when a tort action is pending against its insured in a state court," *Allstate v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990), "it is the rare insurance liability action that warrants the exercise of jurisdiction under the Declaratory Judgment Act." *Acuity, A Mutual Insurance Company v. Reliable Investment, LLC*, 2015 WL 6108299 at *2 (E.D. Mich. Oct. 16, 2015); *see also Nautilus Ins. Co. v. Grayco Rentals, Inc.,* 2011 WL 839549 at *2 (E.D. Ky. Mar. 7, 2011) ("[I]t is a rare case in which federal district courts should assert jurisdiction over an insurance company's declaratory judgment action to resolve indemnity issues ancillary to an

6

ongoing state-court case."). As the court explained in *Manley, Bennett, McDonald & Co.*

*v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460 (6th Cir. 1986):

> Declaratory judgment actions are seldom helpful in resolving an ongoing
> action in another court. Such actions for an advance determination in the
> nature of an advisory opinion should normally be filed, if at all, in the court
> that has jurisdiction over the litigation which gives rise to the indemnity
> problem. Otherwise, confusing problems of scheduling, orderly
> presentation of fact issues and *res judicata* are created.

*Id.* at 463.

In order to make the determination of whether to assume discretionary jurisdiction

and render declaratory relief, the Sixth Circuit has directed that lower courts consider the

following factors:

> (1) whether the declaratory action would settle the controversy; (2) whether
> the declaratory action would serve a useful purpose in clarifying the legal
> relations in issue; (3) whether the declaratory remedy is being used merely
> for the purpose of "procedural fencing" or "to provide an arena for a race
> for *res judicata*"; (4) whether the use of a declaratory action would increase
> friction between our federal and state courts and improperly encroach upon
> state jurisdiction; and (5) whether there is an alternative remedy which is
> better or more effective.

*Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012) (quoting *Grand Trunk W. R. Co. v.*

*Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

B.     THE COURT DECLINES TO EXERCISE DISCRETIONARY
       JURISDICTION OVER THIS ACTION

The Court finds that balancing the factors laid out by the Sixth Circuit Court in

*Grand Trunk* and reiterated in *Savoie* favors the Court's abstention from exercising

discretion to render declaratory relief in this action.

7

In the context of lawsuits to determine policy coverage obligations, courts often consider the first and the second *Grand Trunk* factors together. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271-72 (6th Cir.2007); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir.2008) (noting that the "second factor in the *Grand Trunk* analysis is closely related to the first factor and is often considered in connection with it").

As the Sixth Circuit explained in *Scottsdale Insurance Co. v. Flowers*, *supra*, two lines of precedent have developed within the Circuit with respect to these first two *Grand Trunk* factors. One line of cases "has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Flowers*, 513 F.3d at 555 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir.2003)). According to that line of cases, "the district court's decision must only clarify the legal relations presented in the declaratory judgment action." *Id.* at 557 (citing *Northland*, 327 F.3d at 454). By contrast, a second, and quite substantial, line of cases holds that the district court's decision "must also clarify the legal relations in the underlying state action" in order to weigh in favor of jurisdiction. *Id.* at 557 (citing *Travelers*, 495 F.3d at 272; *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir.2004)).

In this case, as in *Bituminous*, where the plaintiff in the state tort action has not

8

been made a party to the declaratory judgment action, the Court concludes that a declaration of insurance coverage will not resolve the controversy. Although a declaratory judgment would "clarify the legal relationship between [the insurer and the insured] pursuant to the insurance contracts, the judgment would not clarify the legal relationship between [the parties] in the underlying state action." *Travelers*, 495 F.3d at 272 (citing *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d at 814). "The collateral liability aspect of the proceedings would continue in state court regardless of the federal court's ruling." *Allstate v. Mercier, supra*, 913 F.2d at 279.

The other *Grand Trunk* factors also weigh against this Court's exercising jurisdiction. As the court found in *Allstate*, "[w]hile a declaratory judgment might 'serve a useful purpose of clarifying the legal relations [between the insurer and the insured],' this clarification would come at the cost of 'increas[ing] friction between our federal and state courts and improperly encroach[ing] upon state jurisdiction.'" *Id.* (alterations in original). As this Court observed in *Acuity*, 2015 WL 6108299, "'[t]here is no question that asserting jurisdiction here could provide some legal clarification as to the proper interpretation of the insurance contract, but '[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" *Id.* at *3 (quoting *Scottsdale Ins. Co v. Roumph*, 18 F. Supp.2d 730, 737 (E.D. Mich 1998)). Though Scottsdale is not a party to the underlying state tort action brought by Juerten Schweizer

9

against Chelsea Hearth & Fireplaces, Chelsea could seek a declaratory judgment in state court much like the one sought here, obviating the need for a federal court to decide a state contract interpretation issue. *See Allstate*, 913 F.2d at 278 (noting that Allstate, the insurer there "could have presented the issues that it brought to federal court in a separate action in the same court that will decide the underlying tort action. We believe that the Michigan court would be in a superior position to address the legal issues on which Allstate seeks a declaration of rights.")

Finally, while there is no reason to believe that this declaratory judgment action was brought merely for the purpose of procedural fencing (the third *Grand Trunk* factor), as indicated above, there is "an alternative remedy" available to Chelsea in that "Michigan provides a mechanism for bringing declaratory judgment actions in state court." *Scottsdale v. Roumph*, 18 F. Supp. 2d at 717. *See* M.C.R. 2.605; *see also Rose v. State Farm Mut. Auto Ins. Co.*, 274 Mich. App. 291, 294, 732 N.W.2d 160, 162 (2000). When state law provides an avenue for the resolution of insurance coverage disputes, the fifth *Grand Trunk* factor favors declining jurisdiction. *Flowers*, 513 F.3d at 562. As the Sixth Circuit has repeatedly noted, there is good reason to "question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Am. Home Assur. Co. v. Evans*, 791 F.2d at 63; *Nautilius*, 2011 WL 839549 at *2 ("[The] preference for respecting state courts' capacity

10

to resolve these ancillary matters. . . reflects the reality that federal district courts are seldom in a better position to resolve state-insurance-law issues wound up with state-public-policy questions"); *see also McCormack v. Scottsdale Ins. Co.*, 2015 WL 5304112 (E.D. Mich. Sept. 10, 2015).  Further, as a practical matter, having both the declaratory judgment action concerning insurance coverage and the underlying tort action before the same state court will promote the efficient resolution of both actions:  Judicial resources as well as those of the parties would be conserved, and settlement negotiations would be greatly facilitated by having all of the parties in the same state case before the same judge or mediator.  *See e.g., Evanston Ins. Co. v. Van Syoc Chartered*, 863 F. Supp. 2d 364, 371 (D.N.J. 2012) ("[R]esolution of [the underlying malpractice case and this declaratory judgment insurance coverage action] would be enhanced by coordinated management in the state court, rather than retaining the coverage case in federal court.  Further, the Court notes that other issues of case management, such as settlement negotiations, could potentially be more efficiently addressed if all interested parties are included in cases pending in the same court." *Id.*)

<u>CONCLUSION</u>

For all of the foregoing reasons, the Court finds that the *Grand Trunk* factors decidedly favor its declining to exercise jurisdiction under the Declaratory Judgment Act. Accordingly,

IT IS HEREBY ORDERED that this case be, and hereby is, DISMISSED,

11

without prejudice to Chelsea's right to proceed with a declaratory judgment action in the state court.[1]

> s/Gerald E. Rosen
> Chief Judge, United States District Court

Dated:  November 9, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 9, 2015, by electronic and/or ordinary mail.

> s/Julie Owens
> Case Manager, (313) 234-5135

---

[1]  If Chelsea elects to file a declaratory judgment complaint in the Washtenaw County Circuit Court, pursuant to M.C.R. 8.111(D), the case would be assigned to the same judge to whom the underlying tort action is assigned.  Alternatively, Chelsea could seek leave of the court to bring Scottsdale into the *Schweizer* action as a third-party defendant, and serve upon Scottsdale a third-party complaint for declaratory judgment pursuant to M.C.R. 2.204.